# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# DELTA DIVISION

**SAMUEL TOLLIVER**  **PLAINTIFF**
**ADC #128883**

v.   No: 2:22-cv-00033-PSH

**DEAN MANNIS,** *et al.*   **DEFENDANTS**

## MEMORANDUM AND ORDER

### I. Introduction

Plaintiff Samuel Tolliver filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 on February 25, 2022, while incarcerated at the Arkansas County Detention Center ("ACDC") (Doc. No. 1).[1] He subsequently filed an amended complaint (Doc. No. 13) and an addendum (Doc. No. 14), which were served on Defendants Sheriff Dean Mannis and Clayton Evans (the "Defendants"). *See* Doc. No. 15. Tolliver alleged that he was forced to shower in unclean conditions while incarcerated at the ACDC.

Defendants Mannis and Evans filed a Motion for Summary Judgment on the merits of Tolliver's claims, together with a Brief in Support and Statement of Indisputable Material Facts (Doc. Nos. 27-29). Tolliver was notified of his

---

[1] Tolliver has since been released. *See* Doc. No. 33.

opportunity to file a response and a separate statement of facts (Doc. No. 30). He filed a response and brief (Doc. Nos. 31-32), but did not file a statement setting forth disputed facts he believes must be decided at trial as required by Local Rule 56.1. Because Tolliver failed to controvert the facts set forth in the Defendants' statement of facts, Doc. No. 29, those facts are deemed admitted. *See* Local Rule 56.1(c). The Defendants' statement of facts, and the other pleadings and exhibits in the record, establish that the material facts are not in dispute, and the Defendants are entitled to judgment as a matter of law.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, and must instead demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in

his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted).

An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". Fed. R. Civ. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

In *Reed v. City of St. Charles, Mo.*, 561 F.3d 788 (8th Cir. 2009), the Eighth Circuit Court of Appeals discussed the requirement that facts be viewed in the light most favorable to the nonmoving party when considering a motion for summary judgment. The Court stated, "[i]f 'opposing parties tell two different stories,' the court must review the record, determine which facts are material and genuinely

disputed, and then view those facts in a light most favorable to the non-moving party—as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe' them." *Id.* at 790 (*quoting Scott v. Harris*, 550 U.S. 372, 380 (2007)).

### III. Facts[2]

On or about November 15, 2021, plaintiff Samuel Tolliver was booked into the ACDC, having been sentenced to the Arkansas Department of Correction (ADC). Doc. No. 29-2, *Tolliver's Arrest and Booking*, at 1-2. On March 14, 2022, Tolliver was released to the custody of the ADC. *Id.* at 2.

On February 3 and February 14, 2022, Tolliver submitted grievances complaining that the shower drains were stopped up, forcing him to shower while standing in dirty, unsanitary water. Doc. No. 29-3, *Tolliver's Requests and Grievances*, at 1 & 3; Doc. No. 14. On February 25, 2022, Tolliver initiated this case by filing a letter complaining about conditions in the ACDC (Doc. No. 1). His letter was construed as a *pro se* complaint filed pursuant to 42 U.S.C. § 1983. *See* Doc. No. 5. He was directed to file an amended complaint to clarify his claims and describe the defendants he sued. *Id. He was specifically instructed to state whether*

---

[2] These facts are taken from the Defendants' statements of indisputable material facts (Doc. No. 29), the documents and records attached, and the pleadings filed by Tolliver.

*he sued defendants in their individual and/or official capacities.* Tolliver subsequently filed an Amended Complaint, stating:

> On Feb. 3, 2022 I submitted a complaint for dates of incidents November 22, 2021 – March 14, 2022. That the drainage system was stopped up completely the entire time I was in Arkansas County Detention Center til my departure for ADC. I had to shower in standing waters with bacteria, semen and mold that comes from others showering and standing waters left behind. This constitutes cruel and unusual punishment amongnst me. It defiles me as a man, its in- humane and caused mental anguish that tormented my morale of what I was dealing with now. I have literally vomited occasionally in the shower when I see what's floating in the water. This is unsanitary to have to endure such filth over four months. I had to swallow my pride and be forced to endure bacteria, filth, mold and semen when taking a shower which is torcher, there was no way around it. Its the only time I can feel human and have time to myself comfortably, but it was stripted from me wrongfully. Sheriff Dean Mannis and Clayton Evans should be held accountable for me having to endure such cruel unusual punishment, inhumane acts, mental anguish and broken morale. Sheriff Dean Mannis is aware of the drainage that needs repaired but failed to do so because the cost of monies. Mr. Evans is aware of it as well, ran a snake, and put liquid fire in the drain continuing this process over and over. Sheriff Dean Mannis failure to maintain a facilities working and order. Do to inhumane acts and negligence, I ask with a heavy heart to be compensated for months of pain and suffering a half million dollars.

Doc. No. 13 at 4-5.[3] Tolliver did not indicate the capacity in which he sued Mannis and Evans. *Id.* at 2.

Defendants submitted the affidavit of Arkansas County Sheriff Johnny Creek describing how issues such as clogged showers were handled at the ACDC while

---

[3] All quotes are transcribed verbatim without any corrections for misspellings or mistakes.

Tolliver was incarcerated there. *See* Doc. No. 29-1, *Affidavit of Sheriff Johnny Creek.* Creek served as Chief Deputy of the Arkansas County Sheriff's office when Tolliver was incarcerated there. *Id.* at ¶ 5. He explained that Tabetha Inman reviewed inmate grievances and notified Maintenance Worker Clayton Evans if a grievance concerned a maintenance issue. *Id.* at ¶ 7. According to Creek, Evans would repair any maintenance issues as soon as possible. *Id.* at ¶ 8. Creek also explained that ACDC jailers observed each inmate to ensure the inmate was safe and that there were no dangerous conditions present during hourly rounds. *Id.* at ¶ 10. According to Creek, if a jailer observed any dangerous conditions or maintenance issues during their rounds, or if a jailer was verbally informed of any dangerous conditions or maintenance issues by an inmate, such as a shower not properly draining, the jailer would promptly notify Evans, who would then begin repairs as needed. *Id.* at ¶ 11. Evans was also tasked with regularly making rounds throughout the facility to observe conditions and to address any conditions requiring maintenance or repair to ensure safe housing for inmates. *Id.* at ¶ 12. Cheek states that as Chief Deputy during the time Tolliver was incarcerated, he would have ensured that Evans was addressing any dangerous conditions within the facility, including improperly draining showers. *Id.* at ¶ 13.

Defendants also submitted Inman's affidavit, in which she stated that had she received a grievance regarding the showers not draining properly, she would report

the issue to Evans, who would then promptly investigate and make any repairs as needed. Doc. No. 29-5, *Affidavit of Officer Tabetha Inman*, at ¶¶ 17-19.

The Defendants also provided a copy of the ACDC's policies and procedures. Doc. No. 29-4. According to those policies, an inmate's conditions of confinement must be safe, sanitary, and orderly, and the detention facility must provide for the basic sanitation and hygiene requirements of detainees. *Id.* at 3. Cells and pods are to be kept clean at all times, and inmates are required to bathe as often as necessary to maintain good cleanliness. *Id.* at 4-6, 9. Inmates' living areas are to be inspected daily. *Id.* at 6.

### IV. Analysis

Although Tolliver was specifically instructed to state whether he sued defendants in their official and/or individual capacities in his amended complaint, he failed to do so. *See* Doc. Nos. 5 & 13. As the Defendants point out, it is well-settled in the Eighth Circuit that "[i]f a plaintiff's complaint is silent about the capacity in which [he] is suing the defendant, we interpret the complaint as including only official-capacity claims." *Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007) (quoting *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995)). *See also Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) ("This court has held that, in order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it

will be assumed that the defendant is sued only in his or her official capacity."). Because Tolliver did not expressly state he was suing the Defendants in their individual capacities, the Court construes Tolliver's claims as official capacity claims only.

Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veach v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Thus, a suit against a defendant in his official capacity is in essence a suit against the County or city itself. *See Murray v. Lene*, 595 F.3d 868 (8th Cir. 2010); *Liebe v. Norton*, 157 F.3d 574 (8th Cir. 1998). A municipality cannot be held liable on the basis of *respondeat superior*, or simply by virtue of being the employer of a tortfeasor. *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201 (8th Cir. 2013). Accordingly, the Defendants, as county employees, can only be held liable in their official capacities in this case if Tolliver can establish that a constitutional violation was committed pursuant to "an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009). To establish municipal liability through an unofficial custom, a plaintiff must demonstrate

> (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts

> pursuant to the governmental entity's custom, *i.e.*, that the custom was a moving force behind the constitutional violation.

*Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014).

Tolliver has not alleged that the conditions he described were caused by an unconstitutional policy or custom of Arkansas County. And the evidence provided by the Defendants establishes that Arkansas County has policies in place to ensure that the inmates incarcerated there live in a clean and sanitary environment. Tolliver has come forward with no evidence showing that Arkansas County has a policy or custom that would allow showers to stay clogged and to force inmates to shower in unsanitary conditions. The only evidence provided by Tolliver are copies of his grievances complaining about plugged shower drains on February 3 and February 13, 2022. The Defendants are therefore entitled to judgment as a matter of law.

## V. Conclusion

The Defendants' motion for summary judgment (Doc. No. 27) is granted. Judgment is awarded in favor of Defendants, and Tolliver's claims are dismissed with prejudice.

IT IS SO RECOMMENDED this 11th day of December, 2023.

_____
UNITED STATES MAGISTRATE JUDGE